# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

**MICHAEL SULLIVAN, et al.,**

    **Appellants,**

                              **USCA No. 24-13466**

**v.**                               **USDC No. 8:22-cv-1605-SPF**

**SARASOTA COUNTY, FLORIDA,**

    **Appellee,**

---

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

---

## ANSWER BRIEF FOR APPELLEE

---

**JOSHUA B. MOYE, COUNTY ATTORNEY**
**SCOTT T. BOSSARD, ASSISTANT COUNTY ATTORNEY**
**Florida Bar No. 0038407**
**Office of the County Attorney**
**Sarasota County, Florida**
**1660 Ringling Boulevard, Second Floor**
**Sarasota, Florida 34236**
**Telephone: (941) 861-7272**
**Facsimile:  (941) 861-7267**
**Attorneys for Appellee**

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMNT

Counsel for Appellee, SARASOTA COUNTY, FLORIDA (the "County"), certifies pursuant to Eleventh Circuit Rule 26.1(a) that the following person or entities have or may have an interest in the outcome of this case:

Joshua B. Moye, Esq., County Attorney, Sarasota County Office of the County Attorney, 1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236, law firm representing SARASOTA COUNTY, FLORIDA.

Scott T. Bossard, Esq., Assistant County Attorney, Sarasota County Office of the County Attorney,1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236, attorney for Defendant/Appellee, SARASOTA COUNTY. FLORIDA.

Defendant/Appellee, SARASOTA COUNTY, FLORIDA, care of its attorney, Scott T. Bossard, Esq., 1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236.

Jonathan Lewis, County Administrator for Sarasota County, Florida, 1660 Ringling Boulevard, 2d Floor, Sarasota, FL 34236.

Richard Collins, Emergency Services Supervisor for Sarasota County, Florida, 1660 Ringling Boulevard, 6th Floor, Sarasota, FL 34236.

David Rathbun, Fire Chief of Sarasota County Fire Department, Sarasota County, Florida, 1660 Ringling Boulevard, 6th Floor, Sarasota, FL 34236.

Plaintiffs/Appellants Michael Sullivan, William Schreiner, Travis Dagenais, Brett Taylor, John Hogue, Glenn Snyder, Michael Huff, Steven Rose, Michael Haslem, James Mattera, Miguel Garcia, Daniel Rankin, and Daniel Norman, care of their attorney, Tamara Imam, Esquire, MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C., 1920 L Street, NW, Suite 400, Washington, DC 20036

Lauren P. McDermott, Esq. and Mark J. Murphy, Esq., MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C., 1920 L Street, NW, Suite 400, Washington, DC 20036

Heidi B. Parker, Esq. and Richard Siwica, Esq, EGAN, LEV & SIWICA, P.A., 231 East Colonial Drive, Post Office Box 2231, Orlando, FL 32802-2231

International Association of Fire Fighters ("IAFF")

Peter Leff, General Counsel for IAFF

The Honorable Sean P. Flynn, Magistrate Judge, United States District Court, Middle District of Florida.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellee does not request oral argument. This case presents neither complex issues of law nor complex facts. Therefore, it is not contemplated that the decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND
    CORPORATE DISCLOSURE STATEMENT . . . ii

STATEMENT REGARDING ORAL ARGUMENT . . . iii

TABLE OF CONTENTS . . . . . . . iv

TABLE OF CITATIONS . . . . . . . v

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION . . . . . . . . . viii

STATEMENT OF THE ISSUES . . . . . . ix

STATEMENT OF THE CASE . . . . . . 1

STATEMENT OF THE FACTS . . . . . . 3

STANDARD OF REVIEW . . . . . . . 13

SUMMARY OF THE ARGUMENT . . . . . 14

ARGUMENT . . . . . . . . . 16

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
    JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE
    UNDISPUTED FACTS DEMONSTRATED THE BATTALION
    CHIEFS ARE EXEMPT "EXECUTIVE" EMPLOYEES UNDER A
    FAIR READING OF 29 CFR § 541.100. . . . . 17

    THE DISTRICT COURT CORRECTLY GRANTED SUMMARY
    JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE
    UNDISPUTED FACTS DEMONSTRATE THE BATTALION CHIEFS
    DID NOT QUALIFY AS "FIRST RESPONDERS" UNDER 29 CFR §
    541.3(b). . . . . . . . . . 26

**THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE UNDISPUTED FACTS DEMONSTRATED THE BATTALION CHIEFS' ON-SCENE AND OFF-SCENE MANAGERIAL DUTIES FALL UNDER 29 CFR § 541.3(b).** . . . . . **42**

**CONCLUSION** . . . . . . . . . **47**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(g) OF THE FEDERAL RULES OF APPELLATE PROCEDURE** . . . **47**

**CERTIFCATE OF SERVICE** . . . . . . **48**

## TABLE OF CITATIONS

<u>**CASES**</u>                                                         <u>**PAGE(S**</u>

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) . . . . . . 13-14

*Bhogaita v. Altamonte Heights Condo. Ass'n*,
    765 F.3d 1277 (11th Cir. 2014) . . . . . 13

*Brown v. Nexus Bus. Solutions, LLC*,
    29 F. 4th 1315 (11th Cir. 2022).. . . . . 19, 26

*Debrecht v. Osceola County*,
    243 F. Supp. 2d 1364 (M.D. Fla. 2003) . . . 18, 36, 38

*Diggs v. Ovation Credit Services*,
    449 F. Supp. 3d 1280 (M.D. Fla. 2020). . . . 18

*Emmons v. City of Chesapeake*,
    982 F.3d 245 (4th Cir. 2020) . . . . 16, 18, 20-22, 24, 26
                         28-33,35, 37-38, 40-45

*Encino Motorcars, LLC v. Navarro*,
    138 S. Ct. 1134 (2018) . . . . . . . 18, 26

*Helix Energy Solutions Group, Inc. v. Hewitt*,
    143 S. Ct. 677 (2023) . . . . . . 19, 26, 32, 44

*Holt v. City of Battle Creek*,
    925 F.2d 905 (6th Cir. 2019) . . . . 18-19, 22, 24, 33

*Jones v. UPS Ground Freight*,
    683 F.3d 1283 (11th Cir. 2012).. . . . . . 14

*Kelly v. City of Alexandria*,
    2023 WL 3981272 (E.D. Va. 2023) . . . . . 18, 33

*Morrison v. County of Fairfax*,
    826 F.3d 758 (4th Cir. 2016) . . . . . . 31

*Mullins v. City of New York*,
    653 F.3d 104 (2d Cir. 2011) . . . . . . 33

*Peterson v. Atlanta Housing Authority*,
    998 F.2d 904 (11th Cir. 1993) . . . . . . 14

*County of Sarasota*,
    26 FPER ¶ 31091 (2000).. . . . . . . 21-22

*Tobin v. Greater Naples Fire Rescue Dist.*,
    2020 WL 3848080 (M.D. Fla. 2020) . . . . . 36

*Vickery v. City of Roswell*,
    2024 WL 4504999 (N.D. Ga. Aug. 9, 2024) . . . 45-46

**STATUTES & CONSTITUTIONS**             **PAGE(S)**

28 U.S.C. § 1291 .    .    .    .    .    .    .    .    viii

29 U.S.C. § 201, et seq. .    .    .    .    .    .    .    1

29 U.S.C. § 207(k).    .    .    .    .    .    .    .    1, 27

29 U.S.C. § 213.    .    .    .    .    .    .    .    18-19

**RULES & OTHER AUTHORITIES**           **PAGE(S)**

29 CFR § 541.3(b).    .    .    .    .    ix, 2, 15-17, 26-28, 42, 46

29 CFR § 541.100 .    .    .    .    .    .    ix, 15-16, 19, 26

29 CFR § 541.102 .    .    .    .    .    .    .    30, 33

29 CFR § 541.2    .    .    .    .    .    .    .    42

29 CFR § 541.200..    .    .    .    .    .    .    19

29 CFR § 541.700..    .    .    .    .    .    .    15, 29

29 CFR § 553.230 .    .    .    .    .    .    .    1

69 Fed. Reg. 22,122-22,130 (Apr. 23, 2004)..    .    30-31, 33, 38, 43-44

Fed. R. Civ. P. 56 .    .    .    .    .    .    .    1

Fed. R. App. P. 32(g)    .    .    .    .    .    .    47

Eleventh Circuit Rule 26.1(a)    .    .    .    .    .    ii

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

Appellee (hereinafter the "County") agrees with Appellants' (hereinafter the "Battalion Chiefs") statement regarding the basis for the District Court's subject matter jurisdiction of the underlying action. The County further agrees with the Battalion Chiefs' statement regarding this Court's appellate jurisdiction under 28 U.S.C. § 1291 to consider this appeal. The County also agrees with the Battalion Chiefs' statement that the notice of appeal was timely filed.

## STATEMENT OF THE ISSUES

I.  Whether the District Court correctly granted summary judgment in favor of the County because the undisputed facts demonstrated the Battalion Chiefs are exempt "executive" employees under a fair reading of 29 CFR § 541.100.

II.  Whether the District Court correctly granted summary judgment in favor of the County because the undisputed facts demonstrated the Battalion Chiefs did not qualify as "first responders" under 29 CFR § 541.3(b).

III.  Whether the District Court correctly granted summary judgment in favor of the County because the undisputed facts demonstrated the Battalion Chiefs' on-scene and off-scene managerial duties fall under 29 CFR § 541.3(b).

## STATEMENT OF THE CASE

This is an appeal from a final order from the Middle District of Florida that granted a motion for summary judgment in favor of the County and directed the clerk to enter judgment in its favor and close the case. (Dkt. 101)[1].

The Battalion Chiefs sued the County alleging the County deprived them of their rights to overtime compensation under the Fair Labor Standards Act[2] ("FLSA"). (Dkt. 10). The Battalion Chiefs specifically alleged they work or have worked for the County in the Sarasota County Fire Department ("SCFD") in the position of Battalion Chief. *Id.* at ¶ 8. They further allege they are covered by the Department of Labor's regulations for firefighters under 29 U.S.C. § 207(k) and 29 CFR § 553.230, which would require the County to pay them overtime compensation. *Id.* at ¶¶ 29-35. The Battalion Chiefs' allegations are based on the nature of the work they perform as Battalion Chiefs in the SCFD. *Id.* at ¶¶ 9-27.

The County moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing it is entitled to judgment as a matter of law because the undisputed, material facts show the Battalion Chiefs are exempt

---

[1] References to the record below shall correspond with the district court docket number. Thus, the order granting the motion for summary judgment, which is identified by the District Court by docket number 101 is herein cited as "Dkt. 101."

[2] *See* 29 U.S.C. § 201, et seq.

from the FLSA overtime pay requirements because they meet the executive and administrative exemptions. (Dkt. 61).

The Battalion Chiefs moved for partial summary judgment on the issue of liability under the FLSA, arguing they are entitled to judgment as a matter of law because the undisputed, material facts show the Battalion Chiefs, under 29 CFR §541.3(b)(1) are "first responders" that are entitled to overtime pay because their "primary duty" is to fight fires even though they may also direct the work of other employees in fighting fires. (Dkt. 80).

On September 30, 2024, the District Court granted the County's motion for summary judgment, denied the Battalion Chiefs' motion for partial summary judgment, and directed the entry of judgment in favor of the County. (Dkt. 101). The order below determined that the undisputed facts demonstrated that the Battalion Chiefs "exempt managerial duties greatly outweigh any non-exempt duties they may have." *Id.* at p. 24. Consequently, the order below concluded the Battalion Chiefs' primary duty is not as a "first responder," which ultimately qualifies them under the executive exemption from overtime pay under the FLSA. *Id.* at 25-26. Final judgment based on the order granting summary judgment followed. (Dkt. 102). Afterward, the Battalion Chiefs timely initiated the instant appeal. (Dkt. 104).

## STATEMENT OF FACTS

The County declines to adopt the Battalion Chiefs' statement of facts and, instead, submits the following statement of undisputed, material facts:

### SCFD Management Team

The Sarasota County Fire Department ("SCFD") employs 543 state-certified firefighters ranging in rank from firefighter to chief, assigned to 23 fire stations. (Dkt. 67 at 12-13). The upward organizational hierarchy of the SCFD consists of firefighters, lieutenants, captains, battalion chiefs, assistant chiefs, deputy chiefs, and the fire chief. (Dkt. 67 at 13-16; Dkt. 71 at 17; Dkt. 73 at 15-16).

In the management team, the SCFD has 15 battalion chiefs, 7 assistant chiefs, 2 deputy chiefs (one for administrative oversight and the other for operations oversight) and the fire chief. (Dkt. 67 at 16, Dkt. 76 at 76, 82; Dkt. 66 at 8; Dkt. 71 at 12). The SCFD added assistant chiefs to the upper management structure because the department grew from about 300 employees to 543 in approximately 10 to 15 years. (Dkt. 71 at 17-18).

The SCFD leadership considers battalion chiefs as part of the "leadership" or "senior management" team. (Dkt. 66 at 13; Dkt. 67 at 19; Dkt. 76 at 14). Battalion chiefs are also the highest ranking SCFD employees within the collective bargaining unit for firefighters, which also includes lieutenants and captains. (Dkt. 73 at 20; Dkt. 76 at 20; Dkt. 67 at 31; Dkt. 71 at 19-20).

## Battalion Chiefs' Job Description

The SCFD job description for battalion chiefs provides they are "Mid-level combat and support exempt supervisory positions responsible for the planning, staffing, and coordinating of assigned human resources and equipment in the execution of the major activities or fire suppression, emergency medical services, fire prevention, logistical support, training and related fire rescue functions." *See* (Dkt. 76 at Ex. 1). Specifically, the battalion chiefs are "responsible for the planning, staffing, supervision, and readiness of their assigned battalion." *Id.*

The job description further assigns battalion chiefs the task of preparing and processing accurate records related to leave, hire back, payroll, probationary evaluations, activity records, accident reports, fire incident reports, and the maintenance of leave reports. *Id.* The battalion chiefs inspect their assigned facilities to ensure personnel and equipment are in line with established standards. *Id.* The battalion chiefs implement rules and regulations, progressive disciplinary steps, and grievance steps. *Id.* Battalion chiefs also participate in the development, implementation, and application of department and county directives and policies. *Id.* The job description reflects that these tasks encompass nearly two thirds of the battalion chiefs' activities. *Id.*

The job description further details the battalion chiefs' responsibilities relative to emergencies, encompassing 15% of their duties, calling on them to

respond to major emergencies and to act as incident commander "supervising fire and rescue operations, special operations, and marine operations until relieved by a higher-ranking officer." *Id*. The remaining 20% of the duties identified in the job description include delivering public education programs, presenting public programs to raise fire and injury prevention awareness in the community, managing risk mitigation activities, working on special projects, assisting superiors with developing administrative policies, directives, and general orders, and then implementing those policies within the subordinate ranks. *Id*.

Per the job description, battalion chiefs must have specific knowledge, skills, and abilities related to the "delivery of all phases of fire protection and emergency medical services." *Id*. Deputy Chief Michael Hartley described this requirement as:

> So we look for our battalion chiefs to be – to manage, evaluate, and have oversight of all areas that take place under their jurisdiction. So whether it's a fire response call, understand what they're supposed to do at fire alarm calls; understand what they're supposed to do at structure fire calls; understand what they're supposed to do at vehicle crashes; large scale EMS incidents. So delivery of all phases of fire protection, emergency medical services, having a knowledge of all phases and all calls that they are responsible for.

(Dkt. 71 at 64-65).

### Battalion Chiefs' Day-to-Day Activities

Beyond the job description itself, the current chief, deputy chiefs, emergency services director, and former chief testified as to the practical day-to-day activities

of battalion chiefs. Emergency Services Director Richard Collins described a battalion chief's place in the organization as:

> Part of the management team of the fire department. They're responsible for supervising. They're responsible for personnel and equipment. They're responsible for multiple stations. They're responsible for incident command and running scenes and are the frontline of making sure that our men and women go to battle safely and have oversight when they go to battle.

(Dkt. 76 at 32).

Former Fire Chief Michael Regnier testified based on his 8 to 10 years serving as a battalion chief in the SCFD, that they represent a necessary part of proper day-to-day management because they "had the expertise to make those discretionary decisions on how to do the overtime, manage the staffing, do the requirements of a battalion chief." (Dkt. 73 at 10-11, 38; Dkt. 66 at 19).

Former Chief Regnier further described the battalion chiefs' day-to-day duties as a "duty to watch their personnel, go to their stations, make sure that they evaluated their personnel . . . they had a level of expectation being met. Their primary goal was to make sure the shift and whatever responsibility they had, it happened." (Dkt. 73 at 88). Deputy Chief Hartley also testified about these day-to-day responsibilities, observing:

> They're having oversight of the men and women on the street that are [providing services]. Our battalion chiefs are managers. They're supervisors. Their first role is to stand back on the scene, watch over

all safety, watch the professionalism being demonstrated by the men and women that are working under their supervision. Their job is to evaluate them; when they go do their station rounds, talk about the major incidents that they observed, that they were a part of, to review those; talk about areas that are strengths, weaknesses. That's why their primary role is supervisors and managers.

(Dkt. 71 at 64-65).

Battalion chiefs are responsible for daily staffing to maintain appropriate readiness within the SCFD. (Dkt. 67 at 40-41; Dkt. 76 at 27-28). "The battalion chief has total discretion on what calls they go to and how they staff the department." (Dkt. 73 at 208). They also make suggestions as part of the budgeting process and have insights as managers of multiple stations about making physical improvements to stations, adding new tools for firefighters, or updating supplies to better equip the stations. (Dkt. 67 at 46-47).

Battalion chiefs also perform all day-to-day paperwork related to payroll within their battalion. (Dkt. 71 at 44-47; Dkt. 67 at 40-44; Dkt. 76 at 27-28; Dkt. 73 at 191-196). They also have the discretion to change payroll forms to ensure they are accurate before they are processed. (Dkt. 71 at 47-53; Dkt. 73 at 191-196).

### Battalion Chiefs at Incident Scenes

At incident scenes, Deputy Chief Hartley described the battalion chiefs' main responsibility as:

The battalion chief's primary role, while responding, is to listen to the call information, determine en route whether additional resources are

needed, or those that are already dispatched, which is 18 to 21 personnel are on our average first-alarm dispatch. He's determining, even before he gets there, if additional resources are needed. Upon arrival his number one responsibility is management and supervision of the scene upon arrival.

(Dkt. 71 at 108-109). Battalion chiefs serve as "frontline incident commander." (Dkt. 76 at 52; Dkt. 67 at 90, 102-103; Dkt. 66 at 18).

Battalion chiefs have the same PPE (personal protection equipment) that all other firefighters have but do not dress out in full PPE at fire scenes. (Dkt. 71 at 82; Dkt. 73 at 118-120). They do not dress out in full PPE because they do not go inside structures, "they normally are in a fixed position, managing and supervising the staff on scene." (Dkt. 71 at 82-83; Dkt. 67 at 79-82; Dkt. 73 at 118-123). Battalion chiefs need to be tethered to a fixed location so that they have a 360-degree view of the scene to enable them to deploy personnel and resources, and "make those tactical decisions." (Dkt. 76 at 57-59; Dkt. 67 at 87, Dkt. 73 at 143). "You have to be the manager of that scene. You have to run that scene as the command unit." (Dkt. 73 at 121). Additionally, they do not carry firefighting hand tools, like an axe, in their assigned vehicles. (Dkt. 71 at 90-91; Dkt. 66 at 53-54; Dkt. 67 at 92-93).

"The battalion chief in command does not go inside the structure. He maintains his vigilance outside, in a fixed position, or in a rotating position, but always on the perimeter, outside of the incident. . . And it is a rarity, a rarity to see

battalion chief, dressed in full PPE with an SCBA [Self-Contained Breathing Apparatus], go inside of a burning structure." (Dkt. 71 at 110-111 (quote); Dkt. 67 at 81-82). "Battalion chiefs are not firefighting. They're managing the personnel at hand because you now have so many resources, you had to make those divisions." (Dkt. 73 at 147). Former Chief Regnier testified that in his 8 to 10 years as a battalion chief, he never entered a structure. (Dkt. 73 at 153-156).

While the first-arriving battalion chief assumes command of the incident scene, a second-arriving battalion chief acts as a secondary commander, addressing such issues as staging, safety, and accountability, providing support for the incident commander based on the needs presented at the incident. (Dkt. 76 at 60-62; Dkt. 73 at 130-132). The second-arriving battalion chief also rarely, if ever, enters a structure. (Dkt. 76 at 62-66; Dkt. 71 at 108-113).

### Battalion Chiefs and Policy Development

Regarding the development and implementation of policies, battalion chiefs participate in the committees that review and consider updates to existing policies and make suggestions on changes to existing policies. (Dkt. 71 at 38-39; Dkt. 67 at 38-39; Dkt. 66 at 34-35). They played a role in reviewing and modifying policies because of their expertise within the organization. (Dkt. 73 at 214-221). As part of the review committees, battalion chiefs focus on "overall management," how

policies affect "emergency response as a whole," and budgetary implications. (Dkt. 71 at 40).

## Battalion Chiefs' Disciplinary Role

Battalion chiefs are "responsible for a number of things when it comes to employees: employee discipline, employee reviews, evaluations … [the] first line of corrective counseling, that they have to sign off on." (Dkt. 71 at 56). They participate in the grievance process as factfinders, gathering reports and witness statements and sometimes providing recommendations based on the gathered information. (Dkt. 71 at 56-60; Dkt. 67 at 49-53; Dkt. 76 at 36-38; Dkt. 73 at 185-191).

In terms of discipline, battalion chiefs are authorized to issue Form 103 counseling forms, which address counseling or a reprimand and must approve such forms if they are issued by lieutenant or captain. (Dkt. 71 at 60-61; Dkt. 67 at 50, Dkt. 73 at 208-209). They further participate in the disciplinary process as investigators, fact-gatherers, and to provide reports and recommendations. (Dkt. 71 at 71-73; Dkt. 73 at 209-214).

Battalion chiefs also perform evaluations of probationary subordinates and performance improvement plans that they personally supervise. (Dkt. 71 at 61-63). "The battalion chief evaluates their [subordinates'] performance continually. The

battalion chief has the ability to informally coach and counsel an employee." (Dkt. 67 at 52).

## Battalion Chiefs' Role in Hiring and Promotions

Battalion chiefs do not directly hire employees, but participate in the hiring process—conducting interviews, serving on hiring panels. (Dkt. 71 at 66-71; Dkt. 67 at 55-59; Dkt. 73 at 163-179). In the hiring, promotional, and firing processes, the deputy chiefs view battalion chiefs' recommendations on those issues "with much greater emphasis than any of the other evaluations, because they are obviously very adept and are senior employees that know the kind of employees we're looking for to represent the county." (Dkt. 71 at 73-76) ("I've usually stuck to a battalion chief's recommendation"); (Dkt. 76 at 44-47; Dkt. 67 at 59-68).

## Battalion Chiefs' Provision of Public Services

Battalion chiefs need to know all aspects of providing fire protection and emergency medical services because they oversee the delivery of those services during calls. (Dkt. 76 at 40-41, 47-49). They train on all aspects of fire protection and emergency medical services because they need to know how their subordinates perform those tasks at incident scenes so they can make thoughtful, precise decisions about how to address the incident. (Dkt. 76 at 98-101; Dkt. 67 at 55, 70-72). They also require additional training to meet the needs of the SCFD relative to "administrative-level decision making," "the operational pieces" like staffing and

payroll processes. (Dkt. 73 at 70). In addition to their own training, BCs facilitate training within their divisions. (Dkt. 73 at 61-62).

## Plaintiffs' Deposition Testimony

The Plaintiffs testified about their job duties and acknowledged that their main duties involved day-to-day management duties, including payroll, scheduling, staffing, implementing training, maintaining proper supply levels, and ensuring policies are followed. (Dkt. 74 at 15-16; Dkt. 72 at 18-24; Dkt. 68 at 18-19; Dkt. 64 at 14-21; Dkt. 77 at 16-22; Dkt. 70 at 17, 21-25; Dkt. 78 at 22-26; Dkt. 65 at 18-22; Dkt. 63 at 20-22, 25-26; Dkt. 79 at 26-31; Dkt. 75 at 31-35; Dkt. 69 at 20-26).

The Plaintiffs further testified that they regularly direct the work of more than two employees, ranging from 25 to 50 subordinates. (Dkt. 74 at 7; Dkt. 72 at 5; Dkt. 68 at 6; Dkt. 64 at 7; Dkt. 77 at 5; Dkt. 70 at 6; Dkt. 78 at 7; Dkt. 65 at 7-8; Dkt. 63 at 6; Dkt. 79 at 7; Dkt. 75 at 6; Dkt. 69 at 6). The Plaintiffs also testified as to their participation and advisory role in the hiring, promotional, and disciplinary processes. (Dkt. 74 at 20-24; Dkt. 72 at 16-19; Dkt. 68 at 24-28; Dkt. 64 at 13, 15-18, 21-22; Dkt. 77 at 10-13, 18-19; Dkt. 70 at 15-21; Dkt. 78 at 15-21; Dkt. 65 at 15-18; Dkt. 63 at 21-23; Dkt. 79 at 20-24; Dkt. 75 at 23, 26-30; Dkt. 69 at 14-16, 16-20).

Several Plaintiffs testified regarding their command role at incident scenes, acknowledging that they manage the scene with the first arriving battalion chief as

incident commander. (Dkt. 74 at 8; Dkt. 72at 6-8; Dkt. 68 at 6; Dkt. 64 at 7, 15-16; Dkt. 77 at 5; Dkt. 70 at 6; Dkt. 78 at 7-8; Dkt. 65 at 7-8; Dkt. 63 at 6-7; Dkt. 79 at 7-8; Dkt. 75 at 7-8; Dkt. 69 at 6-7). At the incident scene, Plaintiffs acknowledged that their role is to direct firefighters and resources, not to participate in fire suppression activities. (Dkt. 74 at 8-9, 11-16; Dkt. 72 at 6-8, 10-15; Dkt. 68 at 6-16; Dkt. 64 at 7-12, 15-16; Dkt. 77 at 5-9; Dkt. 70 at 6-11; Dkt. 78 at 7-14; Dkt. 65 at 7-14; Dkt. 63 at 6-16; Dkt. 79 at 7-19; Dkt. 75 at 7-15; Dkt. 69 at 6-14).

## STANDARD OF REVIEW

The standard of review this Court applies to a district court's grant of summary judgment is *de novo*, applying the same legal standards that bound the district court. *E.g., Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1284 (11th Cir. 2014); Fed. R. Civ. P. 56. Accordingly, summary judgment is appropriate "where the evidence shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*.

Under this standard, this Court reviews the evidence in the light most favorable to, and draws all *reasonable* inferences in favor of, the non-moving party. *Id*. However, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *E.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Indeed, evidence

that is merely colorable, or not significantly probative of a disputed fact, is insufficient to create a genuine issue of material fact. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012). An issue of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 247-248.

Further, in *de novo* review, this Court may reach the same conclusion as the District Court on questions of law but may do so for reasons independent of those cited by the District Court. *Peterson v. Atlanta Housing Authority*, 998 F.2d 904, 912 (11th Cir. 1993) ("The district court's conclusion of law is subject to complete and independent review by this Court").

## SUMMARY OF THE ARGUMENT

The District Court correctly granted summary judgment in favor of the County because the undisputed material facts demonstrated the Battalion Chiefs qualified for the executive employee exemption from the overtime pay requirements of the FLSA.

In doing so, the District Court correctly determined the Battalion Chiefs (1) earned not less than $684 per week; (2) have the primary duty of management of the business; (3) customarily and regularly direct the work of two or more employees; and (4) have the authority to hire or fire other employes or whose suggestions and

recommendations as to hiring, firing, advancement, promotion, or any other change of status of employment are given particular weight. *See* 29 CFR §541.100(a).

Moreover, the District Court correctly determined the Battalion Chiefs do not qualify as "First Responders" under 29 CFR § 541.3(b) because their primary duties are exempt, managerial duties under the first three regulatory factors: (1) the relative importance of the exempt duties as compared with other duties; (2) the amount of time spent performing exempt work; and (3) the employee's relative freedom from direct supervision. *See* 29 CFR § 541.700. Indeed, the nature of their duties is determined by what they actually and regularly do, not by what they might, in rare circumstances, do.

Additionally, as the factually similar Fourth Circuit case, *Emmons v. City of Chesapeake*, 982 F.3d 245 (4th Cir. 2020), shows, "the fourth and final factor does not suffice to overcome the combined force of the first three factors, especially given that the primary duty analysis must be a 'holistic one' that 'steps back' to look at the position in question with a 'broad lens.'" *Emmons* at 256.

The District Court correctly applied *Emmons*, a case involving a similarly sized and organized department to SCFD, which demonstrated that the undisputed facts here showed that the Battalion Chiefs operate as battalion supervisors and incident commanders, not frontline firefighters. They are not automatons that merely input data into a computer system. Rather, they are integral parts of the management

of the organization under 29 CFR § 541.3(b). Thus, the District Court correctly concluded the Battalion Chiefs meet the executive exemption, entitling the County to summary judgment in the order below.

Accordingly, this Court should affirm the judgment below.

## ARGUMENT

The County agrees that the central legal issue in this case is whether the Battalion Chiefs are exempt from the overtime pay requirements of the FLSA. As will be shown, *infra*, the District Court correctly granted summary judgment in favor of the County because the undisputed facts demonstrated that the Battalion Chiefs qualified as exempt from the overtime pay requirements of the FLSA because they are executive employees under 29 CFR § 541.100. This answer brief will further show the District Court did not engage in improper "factfinding and weighing of evidence" to reach the correct result. *Id.* at 18 (quotation). Rather, the District Court correctly applied the law to the undisputed facts.

The Battalion Chiefs argue the undisputed facts did not support the District Court's conclusion that the Battalion Chiefs were exempt executive employees. *See* Initial Brief at 40-47. The Battalion Chiefs further argue that they are entitled to overtime pay under the FLSA because their "primary duty" is the work of a "first responder" and not of a manager with the SCFD. *Id.* at 22-34. The Battalion

Chiefs also similarly argue summary judgment was inappropriate because their supervisory duties do not disqualify them as "first responders" under 29 CFR § 541.3(b). *Id.* at 34-40. The County shall address these flawed arguments in turn after showing the District Court correctly determined the Battalion Chiefs were exempt executive employees.

## I. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE UNDISPUTED FACTS DEMONSTRATED THE BATTALION CHIEFS ARE EXEMPT "EXECUTIVE" EMPLOYEES UNDER A FAIR READING OF 29 CFR § 541.100.

The District Court summarized its task in analyzing the competing motions for summary judgment, "in which both parties ask the Court to determine whether [the Battalion Chiefs] are exempt from the FLSA's overtime pay requirement under the statute's executive or administrative[3] exemptions." (Dkt. 101 at 1). The order below shows that the District Court correctly applied the requirements for the executive employee exemption to the undisputed facts describing the Battalion Chiefs' duties, resulting in the correct determination that the Battalion Chiefs are exempt executive employees.

---

[3] The Battalion Chiefs correctly noted in their initial brief that the order below should be reviewed only in the context of application of the executive employee exemption. *See* Initial Brief at 20. The County agrees that this Court should not consider the administrative employee exemption in its review of the order below.

## A) Standard of Review for FLSA Exemptions

The FLSA generally requires employers to pay overtime compensation to employees who work more than 40 hours a week. However, the FLSA exempts certain classes of employees from the overtime pay requirements. *See* 29 U.S.C. § 213 (exemption available for "executive, administrative, or professional" employees).

In determining whether a class of employees is exempt from the FLSA's overtime pay requirements, the United States Supreme Court has held that courts should apply a "fair reading" to the exemptions. *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018); *see also Diggs v. Ovation Credit Services*, 449 F. Supp. 3d 1280, 1285 and n. 5 (M.D. Fla. 2020) (noting that *Encino* "explicitly rejected" that FLSA exemptions be narrowly construed).

Notably, since *Encino*, a "fair reading" of the FLSA has resulted in two federal circuits, a Virginia district court, and this Court concluding that fire battalion chiefs similarly situated to the Battalion Chiefs were exempt from FLSA overtime pay requirements. *See Holt v. City of Battle Creek*, 925 F.3d 905 (6th Cir. 2019) and *Emmons v. City of Chesapeake*, 982 F.3d 245 (4th Cir. 2020); *see also Kelly v. City of Alexandria*, 2023 WL 3981272 (E.D. Va. 2023) and *Debrecht v. Osceola County*, 243 F. Supp. 2d 1364 (M.D. Fla. 2003) (battalion chiefs deemed FLSA exempt under stricter standard preceding *Encino*).

## B) Battalion Chiefs Satisfy Four-Part Test for Executive Exemption

Federal law provides that an employee is exempt from FLSA overtime pay compensation if the employee works "in a bona fide executive, administrative, or professional capacity" as defined under agency regulations. *See Helix Energy Solutions Group, Inc. v. Hewitt* ("*Hewitt*"), 143 S. Ct. 677, 682 (2023), citing 29 U.S.C. § 213(a)(1). In this case, the undisputed facts show the Battalion Chiefs are exempt under the executive exemption. *See Holt* at 912-913; *see generally* 29 CFR §§ 541.0, 541.100, and 541.200.

For the executive exemption to apply, an employee must (1) earn not less than $684 per week; (2) have the primary duty of management of the business; (3) customarily and regularly direct the work of two or more employees; and (4) have the authority to hire or fire other employes or whose suggestions and recommendations as to hiring, firing, advancement, promotion, or any other change of status of employment are given particular weight. *See* 29 CFR §541.100(a).

It is not necessary to fully satisfy all prongs under the "fair reading" standard. *Emmons* at 256; *see also Brown v. Nexus Bus. Solutions, LLC*, 29 F.4th 1315 (11th Cir. 2022) and *Hewitt*, 143 S. Ct. at 682. Rather, the analysis must be a "holistic one" that reviews the position in question with a "broad lens." *Id.* Each of the four prongs shall be discussed in turn, below.

### 1) Prong One – Battalion Chiefs' Salary Exceeds $684 Per Week

In this case, the Battalion Chiefs indisputably meet the first prong—they earn no less than $684 per week. *See* Dkt. 62 at ¶ 5 (Plaintiffs earned more than $684 per week since January 1, 2019).

### 2) Prong Two – Battalion Chiefs' Primary Duty is Management

In *Emmons*, the Fourth Circuit affirmed a district court's decision finding the battalion chiefs employed by the city of Chesapeake, Virginia, were exempt from the FLSA overtime pay requirements under the executive exemption. *See Emmons* at 247, 258. Notably, the Chesapeake fire department represents a similarly sized and organized department to SCFD. *Compare Emmons* at 247 (449 employees in department, battalion chiefs as fourth managerial level down from chief) with Dkt. 67 at 12-13 (543 employees in department) Dkt. 71 at 17-18 (battalion chiefs as fourth managerial level down from chief).

The Fourth Circuit examined the battalion chiefs' duties relative to the executive exemption and observed the battalion chiefs' "in-station duties" were "extensive." *See Emmons* at 247. Those duties included making day-to-day staffing decisions, ensuring the required staffing levels are met, reviewing and approving leave requests, and meeting operational needs and readiness. *Id.* at 247-248. The battalion chiefs' in-station duties also included supervisory responsibilities in

evaluating firefighters' performance, training firefighters, and "when necessary, administering and recommending discipline." *Id.* at 248-249.

In this case, the undisputed facts show the Battalion Chiefs similarly perform extensive in-station duties. Battalion chiefs act as a necessary part of day-to-day management. They are expected to "manage, evaluate, and have oversight of all areas that take place under their jurisdiction" (Dkt. 71 at 64-65). These duties include making staffing decisions, approving leave requests, and the processing of payroll. They also evaluate firefighters' performance and facilitate training where needed. When the battalion chiefs first joined the bargaining unit, they agreed that their duties involved directing the work of subordinates, maintaining proper staffing levels and payroll records, coordinating training, and implementing rules and regulations. *See Sarasota-Manatee Professional Firefighters and Paramedics, Local 2546, IAFF v. County of Sarasota* ("*County of Sarasota*"), 26 FPER ¶ 31091 (2000).

Outside of their in-station duties, the battalion chiefs in *Emmons* filled a significant role in emergency response. *Emmons* at 249-250. The emergency response role includes assuming command at incident scenes, coordinating tactical priorities at incident scenes, and exercising discretion over dispatches where a full emergency response is unnecessary. *Id.* at 250. Notably, although battalion chiefs arrive at incident scenes in vehicles equipped emergency response gear, like self-

contained breathing apparatus, they do not "typically engage in any hands-on firefighting, such as handling hoses, climbing ladders, or entering burning structures." *Id.* The Fourth Circuit concluded from these duties that the battalion chiefs were not "frontline firefighters," but were "distinctly managerial." *See Emmons* at 253; *see also Holt* at 911.

The undisputed facts in this case show that the Battalion Chiefs similarly serve as frontline incident commanders, whose main responsibilities are managing and supervising an incident scene. It is indisputable that battalion chiefs are not dispatched to go inside structures—their role is to maintain a fixed location outside the incident with a 360-degree view of the scene so they can manage personnel, deploy resources, and make tactical decisions. (Dkt. 76 at 57-59; Dkt. 67 at 79-82, 87; Dkt. 73 at 118-123, 143; Dkt. 71 at 82-83, 108-109). A battalion chief rarely dresses in full gear at an incident scene and "it is a rarity" to see one go inside of a structure in full gear. (Dkt. 71 at 110-111 (quote); Dkt. 67 at 81-82); *see also County of Sarasota* at 156-157 (mutual acknowledgement that battalion chiefs do not regularly engage in the physical act of fire suppression but rather engage mainly in administrative and supervisory duties).

Another factor supporting the conclusion the battalion chiefs in *Emmons* were exempt is that they are "relatively free from direct supervision." *Emmons* at 255-256. The Fourth Circuit noted, "While BCs work 24-hour shifts, their superiors do not.

This leaves BCs not only unsupervised but also, in many respects, effectively without a superior for much of the time they spend on the job." *Id.* In this case, the Battalion Chiefs similarly work 24-hour shifts, while their superiors do not, which leaves them without a superior for much of their time on duty.

In the Initial Brief, the Battalion Chiefs argue the District Court improperly weighed the undisputed facts and/or engaged in "factfinding." *See* Initial Brief at 18. However, a careful review of the order below and the undisputed facts supporting it show the District Court did not engage in factfinding or fact-weighing but rather performed its task of assigning the legal significance of the undisputed facts below, Under the "fair reading" standard, summary judgment is not defeated by anecdotal evidence of limited instances where exceptions to established practices occur.

The District Court had the Battalion Chiefs' testimony as the factual core of the order below. Their testimony confirmed the testimony of the upper management team, who acknowledged that the Battalion Chiefs' role is never an all or nothing proposition. For example, none of the witnesses denied the possibility that a battalion chief at a fire scene may on a rare occasion be called upon to engage in firefighting. (Dkt. 71 at 110-111; Dkt. 67 at 81-82). The current Fire Chief acknowledged that even he can be called upon to do so in certain circumstances. (Dkt. 67 at 133). Thus, the District Court did not weigh the facts or cherry pick which facts to rely upon, the

undisputed facts, as a whole, support the correct conclusion reached in the order below, which properly applied the "fair reading" standard.

### 3) Prong Three – Battalion Chiefs Direct More Than Two Employees

The undisputed facts further show the Battalion Chiefs meet the third prong because they admit that they customarily and regularly direct the work of two or more employees—they manage all the personnel at multiple stations and manage and direct, at least, 18 to 21 firefighters at incident scenes. (Dkt. 74 at 7; Dkt. 72 at 5; Dkt. 68 at 6; Dkt. 64 at 7; Dkt. 77 at 5; Dkt. 70 at 6; Dkt. 78at 7; Dkt. 65 at 7-8).

### 4) Prong Four – Battalion Chiefs' Role in Hiring, Discipline, and Firing

The battalion chiefs' disciplinary authority in *Emmons* extended to "addressing infractions of departmental regulation through verbal counseling or reprimand, or through the issuance of a form disciplinary letter." *Emmons* at 249. For higher levels of discipline, the battalion chiefs offer recommendations that were "often but not always adopted." *Id*. Additionally, battalion chiefs made hiring and promotional recommendations to their superiors, including participating in hiring panels. *Id*. The Fourth Circuit concluded these in-station activities constituted "exempt managerial work." *See Emmons* at 252; *see also Holt* at 912.

In this case, the undisputed facts show the Battalion Chiefs possess discretionary disciplinary authority to address specific issues with subordinates

through verbal counseling, reprimands, or the issuance of a form disciplinary letter. Moreover, they actively participate in higher levels of disciplinary matters, often performing investigative duties and providing recommendations to higher levels of management. As to hiring and promotional processes, they participate in review panels and make recommendations to higher levels of management. Indeed, SCFD views their recommendations on hiring, promotional, and firing processes with great emphasis because battalion chiefs are adept, senior management employees that "know the kind of employees we're looking for to represent the county." (Dkt. 71 at 73).

Because the undisputed, material facts show that the Battalion Chiefs earn the requisite weekly pay, have the primary duty of managing the day-to-day activities of SCFD, customarily direct the work of dozens of employees at multiple stations, and have particular weight given to their recommendations regarding hiring, promotion, and discipline, the Battalion Chiefs satisfy the executive exemption from FLSA overtime pay requirements under a fair reading of the governing statutory and regulatory law.

The order below correctly recognized that the Battalion Chiefs met the executive exemption under a fair reading of the regulation. The District Court reviewed the entirety of the factual record and correctly concluded that the Battalion Chiefs' primary duty was management duty, not frontline firefighting. *See* Dkt. 101

at 21-24. The order below correctly concluded that the Battalion Chiefs participate in the hiring, promotional, and disciplinary processes with their input and suggestions "given particular weight." *Id.* at 25-26.

Additionally, contrary to the Battalion Chiefs' assertions, the "fair reading" standard established in *Encino* makes it unnecessary to fully satisfy all prongs to qualify for the executive exemption. *See Emmons* at 256; *see also Brown* at 1315 and *Hewitt*, 143 S. Ct. at 682. Thus, the Battalion Chiefs' nitpicking about isolated, anecdotal statements of fact does not preclude summary judgment on this undisputed factual record. Nonetheless the undisputed facts in this case do show Battalion Chiefs meet all prongs of the executive test. *See* Dkt. 61 at 16-21. Thus, consistent with *Emmons*, the Battalion Chiefs qualify as exempt employees, which entitled the County to summary judgment.

Accordingly, because the undisputed facts show the Battalion Chiefs are exempt "executive" employees under a fair reading of 29 CFR § 541.100, the entry of judgment in favor of the County was correct and should be affirmed by this Court.

## II. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE UNDISPUTED FACTS DEMONSTRATE THE BATTALION CHIEFS DID NOT QUALIFY AS "FIRST RESPONDERS" UNDER 29 CFR § 541.3(b).

The Battalion Chiefs wrongly assert they do not satisfy the test for the executive employee exemption. *See* Initial Brief at 22-39 and Dkt. 81 at 17-20. The

Battalion Chiefs' position relies on the incorrect assertion that their primary duty is as a "first responder" under the First Responder Regulation, 29 CFR § 541.3(b). *Id.*

A)      **The Battalion Chiefs' reliance on regulatory first responder definition is oversimplified and misplaced.**

The Battalion Chiefs' initial argument that they are entitled to FLSA overtime pay relies on the argument that their primary duty is "emergency response, not management of the enterprise." *See* Initial Brief at 22-34 and Dkt. 80 at 14-19. In support of this argument, the Battalion Chiefs rely on the "First Responder Regulation." *See* Initial Brief at 22-34 and Dkt. 80 at 15-16; *see also* 29 CFR § 541.3(b). As will be shown, the Battalion Chiefs' reliance on the First Responder Regulation oversimplifies the nature of their primary duty and is misplaced under case law applied to the undisputed facts of this case.

The First Responder Regulation categorically excludes certain classes of workers from the FLSA's overtime exemptions. *See* 29 CFR § 541.3(b)(1). Those classes include, "police officers, detectives … fire fighters, paramedics, emergency medical technicians, ambulance personnel, rescue workers … regardless of rank or pay level, who perform work such as preventing, controlling or extinguishing fires of any type; rescuing fire, crime or accident victims … or other similar work." *Id.* "Stated otherwise, if an employee falls into one of these enumerated classes, then the FLSA's executive exemption does not apply, and that employee must be paid overtime in accordance with 29 U.S.C. § 207." *Emmons* at 251.

As the County demonstrated below, the undisputed facts of this case closely aligned with the facts of *Emmons*, particularly the department size, organizational structure, and duties assigned to battalion chiefs. In *Emmons*, the Fourth Circuit held that battalion chiefs in a similar place in the fire department hierarchy as the Battalion Chiefs who performed similar duties to those of the Battalion Chiefs were FLSA exempt under the executive exemption. *See Emmons* at 256-257. *Emmons* looked at the First Responder Regulation in its analysis and it did not support the Battalion Chiefs' oversimplified view of the regulation, stating:

> But these classes must be approached with caution. An employee is not a "fire fighter" under the First Responder Regulation merely because, for example, the words "fire fighter" appear in his job title, 29 CFR § 541.2, or because he happens to be employed by the fire department. To do so would be to privilege form over substance in a manner at odds with both the internal logic and the purpose of the FLSA. Avoiding this mistake, 29 CFR § 541.3(b)(2) identified the essential criterion accordingly: "[The employees listed in § 541.3(b)(1)] do not qualify as exempt executive employees because their primary duty is not management of the enterprise in which the employee is employed." **Section 541.3(b)(1) presupposes therefore, that the primary duty of each enumerated group is not to "manage the enterprise" but rather to engage in particular sorts of <u>hands-on activity</u>, such as— in the case of fire fighters—extinguishing fires and rescuing fire and accident victims. An individual whose work does not meet this criterion, though he might be called a "fire fighter" in some other, colloquial sense, cannot be deemed one under § 541.3(b).**

*Emmons* at 251 (emphasis added, internal citations and emphasis omitted).

**B)** **The Battalion Chiefs' primary duties are exempt, management duties under the four-part primary duty test.**

*Emmons* instructs that "[d]etermination of an employee's primary duty is fact-sensitive" and "must focus on the substance of his works as performed in practice." *Emmons* at 251, citing 29 CFR § 541.700(a). 29 CFR § 541.700 provides that determination of an employee's primary duty "ought to include" consideration of the following four factors:

1. The relative importance of the exempt duties as compared with other duties;
2. The amount of time spent performing exempt work;
3. The employee's relative freedom from direct supervision; and
4. The relationship between the employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee.

*See* 29 CFR § 541.700. The Battalion Chiefs' arguments as to the application of these factors fail under the undisputed, material facts.

**1)** **First Factor – Exempt Duties v. Other Duties**

The first factor's review of exempt duties in comparison to other duties begins with the regulatory definition of "management," which states:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production of sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other

changes of status; handling employees' complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used... planning and controlling the budget; and monitoring or implementing legal compliance measures."

See 29 CFR § 541.102; see also Emmons at 251-252. As Emmons explains, "[t]he picture that emerges is of management as an act of authority, formed in some degree through independent judgment, by which the members of an enterprise, and their affairs, are ordered toward its end." See Emmons at 252. Thus, "the principal expression of a manager's discretion consists in determining, to a greater or lesser degree, how others within the enterprise will act to advance the purpose for which the enterprise exists." Id.

### Department of Labor Regulatory Guidance

Notably, the Department of Labor provided additional guidance on what duties are considered managerial in the context of the First Responder Regulation. See 69 Fed. Reg. 22,130 (Apr. 23, 2004). This guidance is located one additional page over from where the Battalion Chiefs conveniently ended their citation to the Federal Register regarding guidance from the Department of Labor in the summary judgment proceedings below. See Dkt. 80 at 16, n. 16, citing 69 Fed. Reg. 22,122 to 22,129 (Apr. 23, 2004). The additional guidance, cited in Emmons, speaks directly to the Battalion Chiefs' role at incident scenes, and refutes the Battalion Chiefs' claim that

they are merely first responders and not FLSA exempt executive or administrative employees. The additional guidance describes the following examples of managerial duties, including:

> [E]nsuring operational readiness through supervision and inspection of personnel, equipment, and quarters; deciding how and where to allocate personnel… [and] directing operations at … fire… scenes, including deciding whether additional personnel or equipment is needed.

*See* 69 Fed. Reg. 22,130 (Apr. 23, 2004); *see also Emmons* at 252.

### Battalion Chiefs' Misapplication of *Morrison*

The Battalion Chiefs wrongly argue their "primary duty is to serve as a first responder, not to manage SCFD." *See* Initial Brief at 22-25 and Dkt. 80 at 16. The Battalion Chiefs cite another Fourth Circuit case, *Morrison v. County of Fairfax*, 826 F.3d 758 (4th Cir. 2016), to argue that "'front-line firefighting' [i]s 'at the center' of their jobs.'" *Id.* The Battalion Chiefs further point to isolated moments where a battalion chief has performed firefighting tasks or stationed themselves close to an active structure fire as evidence that their primary duty is "firefighting." *See* Initial Brief at 30-31 and Dkt. 80 at 17-18.

However, the undisputed facts show such isolated moments are rare and do not historically describe the normal activities of battalion chiefs at incident scenes. (Dkt. 71 at 110-111; Dkt. 73 at 153-156). The Battalion Chiefs testified in their depositions that their role at incident scenes is to direct firefighters and manage

resources, *not to participate in fire suppression activities*. (Dkt. 74 at 8-9, 11-16; Dkt. 72 at 6-8, 10-15; Dkt. 68 at 6-16; Dkt. 64 at 7-12, 15-16; Dkt. 77 at 5-9; Dkt. 70 at 6-11; Dkt. 78 at 7-14; Dkt. 65 at 7-14; Dkt. 63 at 6-16; Dkt. 79 at 7-19; Dkt. 75 at 7-15; Dkt. 69 at 6-14). As shown, the analysis of the employees' duties must be a "holistic one," which allows for exceptions to the standard operating procedure. *See Emmons* at 256 and *Hewitt*, 143 S. Ct. at 682. Thus, while there may be the occasional participation by a battalion chief in frontline firefighting, the undisputed facts below, primarily the deposition testimony of the Battalion Chiefs themselves, demonstrated those occasions were rare

In contrast to the rare, exceptional occasions relied on by the Battalion Chiefs, the undisputed facts show the Battalion Chiefs serve as "frontline incident commander" at incident scenes. (Dkt. 71 at 108-109; Dkt. 76 at 52; Dkt. 67 at 90, 102-103; Dkt. 66 at 18). This role includes determining, while *en route* to the scene, whether additional resources are needed, and upon arrival, allocating resources, managing, and supervising the scene. (Dkt. 71 at 108-109). This management and supervision occur "outside, in a fixed position, or in a rotating position, but always on the perimeter, outside of the incident." (*Id.* at 110-111).

### Developing Response Plan v. Direct Action to Execute Plan

*Emmons* noted that the Department of Labor's specific guidance on managerial work in the context of firefighting is significant because "it

distinguishes clearly between officers whose primary responsibility is to develop an emergency response plan, and those whose primary responsibility is not to debate it or revise it, but to effect it by taking direct action." *See Emmons* at 252; *see also* 69 Fed. Reg. 22,130 (Apr. 23, 2004) and *Holt* at 912.

Thus, the specific guidance "elaborates seamlessly on the same theme expressed in [29 CFR] § 541.102 and recognizes the real difference between the firefighter at the frontlines, who must rush into a burning building, and the commander whose job it is to ensure that he is doing so in the right way and at the right time." *See Emmons* at 252, citing *Mullins v. City of New York*, 653 F.3d 104, 115 (2d Cir. 2011); *see also Holt* at 908, 911-912 and *Kelly v. City of Alexandria*, 2023 WL 3981272 at *5-6 (E.D. Va. 2023).

The undisputed facts in this case show that the Battalion Chiefs do many of the things their subordinates do in terms of training and preparation. (Dkt. 76 at 40-41, 47-49; Dkt. 73 at 61-62). However, once dispatched to an incident scene, the Battalion Chiefs, with first-hand knowledge of what is required to fight fires, step into the role of directing their subordinates to apply their training and do the hands-on activity of firefighting. (Dkt. 73 at 147; Dkt. 71 at 90-91; Dkt. 66 at 53-54; Dkt. 67 at 92-93) (battalion chiefs do not carry firefighting hand tools in their department vehicles). Thus, the Battalion Chiefs indisputably perform the

managerial task of directing the "front-line firefighting" of others, they rarely, if ever, do that themselves.

### Day-to-Day Management Duties Outside of Incident Scenes

In addition to the Battalion Chiefs' command responsibility to manage personnel and resources at incident scenes, their regular day-to-day responsibilities involve exempt managerial work. Former Chief Regnier described the Battalion Chiefs' day-to-day responsibilities as "duty to watch their personnel, go to their stations, make sure that they evaluated their personnel . . . they had a level of expectation being met. Their primary goal was to make sure the shift and whatever responsibility they had, it happened." (Dkt. 73 at 88).

The Battalion Chiefs oversee their subordinates, observe their professionalism and, through appropriate daily staffing, maintain their readiness. (Dkt. 67 at 40-41; Dkt. 76 at 27-28; Dkt. 71 at 64-65). They also make suggestions as part of the budgeting process and have insights as managers of multiple stations about making physical improvements to stations, adding new tools for firefighters, or updating supplies to better equip the stations. (Dkt. 67 at 46-47).

### Managing Employee Evaluation and Discipline

The Battalion Chiefs are "responsible for a number of things when it comes to employees: employee discipline, employee reviews, evaluations … [the] first line of corrective counseling, that they have to sign off on." (Dkt. 71 at 56). They

participate in the grievance and disciplinary process as factfinders, gathering reports and witness statements and sometimes providing recommendations based on the gathered information. (Dkt. 71 at 56-60, 71-73; Dkt. 67 at 49-53; Dkt. 76 at 36-38; Dkt. 73 at 185-191, 209-214).

In terms of discipline, the Battalion Chiefs are authorized to issue Form 103 counseling forms, which address counseling or a reprimand and must approve such forms if they are issued by lieutenant or captain. (Dkt. 71 at 60-61; Dkt. 67 at 50, Dkt. 73 at 208-209). They also evaluate probationary subordinates and performance improvement plans that they personally supervise. (Dkt. 71 at 61-63). Also, in addition to their own training, the Battalion Chiefs facilitate training within their divisions. (Dkt. 73 at 61-62).

*Emmons* viewed these daily in-station staffing and supervisory duties as "exempt managerial work." *See Emmons* at 252-253 ("Staffing, which [battalion chiefs] must engage in on a daily basis, is a typical managerial activity"). Indeed, as *Emmons* aptly observed, "[i]f this kind of activity does not constitute 'planning the work,' 'apportioning the work,' and 'deciding how and where to allocate personnel,' it is difficult to imagine what could." *See Emmons* at 252.

As to supervisory activities, "that these activities constitute 'training' employees, 'disciplining' them, and 'maintaining operational readiness through inspection and supervision of personnel,' is clear." *Id.* at 253. Here, the undisputed

facts below show most of the Battalion Chiefs' activities consist of day-to-day staffing and supervision, which are considered exempt managerial activities under federal law.

### 2) Second Factor – Time Spent on Exempt v. Other Duties

The second factor examines the ratio between the Battalion Chiefs' time devoted to exempt duties and other duties. This examination is not a purely quantitative analysis because this factor is examined through the lens of the first factor, which applies a qualitative analysis of the importance of the exempt work in comparison to the Battalion Chiefs' other work.

Thus, as the Middle District of Florida previously observed, "time alone is not the sole test," and where fire battalion chiefs spent 85 percent of their time doing non-exempt tasks, the comparative importance of the 15 percent of exempt managerial tasks they performed nonetheless placed them in the category of exempt, managerial employees. *See Debrecht* at 1370 n. 11, 1370-1372; *see also Tobin v. Greater Naples Fire Rescue Dist.*, 2020 WL 3848080 at *1 n. 1 (M.D. Fla. 2020) (parties agreeing facts "almost identical" those of *Debrecht* and acknowledging plaintiffs were "highly unlikely to prevail at trial").

The Battalion Chiefs acknowledged that their main duties involved day-to-day management duties, including payroll, scheduling, staffing, implementing training, maintaining proper supply levels, and ensuring policies are followed.

(Dkt. 74 at 15-16; Dkt. 72 at 18-24; Dkt. 68 at 18-19; Dkt. 64 at 14-21; Dkt. 77 at 16-22; Dkt. 70 at 17, 21-25; Dkt. 78 at 22-26; Dkt. 65 at 18-22; Dkt. 63 at 20-22, 25-26; Dkt. 79 at 26-31; Dkt. 75 at 31-35; Dkt. 69 at 20-26).

Indeed, a cursory review and analysis of the amount of time spent on fire calls shows the Battalion Chiefs inaccurately overstated how much time they do what they wrongly assert is non-managerial work. For the years at issue, 2019 through 2022, Sarasota County had an average of one confirmed building fire per day for which two of the four on-duty battalion chiefs typically respond. *See* Dkt. 82 at ¶¶ 6-7. Based on this incident rate, the Battalion Chiefs spent less than 2 percent of their on-duty time responding to or being on scene at fire incidents. *Id.* at ¶ 8. Moreover, the data from 2019 to 2022 shows the Battalion Chiefs spent less than 5 percent of their on-duty time responding to or being on scene for any incident, fires included. *Id.* at ¶ 9.

This review of the Battalion Chiefs' time commitment relative to confirmed fire calls, where, following *Emmons*, they are performing managerial work as incident commanders, reveals their job description is generous in reflecting the ratio of their incident scene work. Indeed, the 15 percent of time in the Battalion Chiefs' job description apportioned to emergency response work exceeds the amount of time they actually spent on confirmed fire calls as discussed in Deputy

Chief Hartley's affidavit. *See Emmons* at 252, citing 69 Fed. Reg. 22,130 (Apr. 23, 2004); *see also Debrecht* at 1370 n. 11, 1370-1372 and Dkt. 82.

The Battalion Chiefs' inaccurate assessment of their time spent performing administrative and managerial work fails to acknowledge the undisputed fact that most of their time is spent performing such work. They fail to acknowledge that federal law properly views their time spent commanding incident scenes as managerial work, not as first responder work. Thus, the Battalion Chiefs are exempt under the first two factors, which focus on the comparison between an employee's exempt duties v. other duties. The undisputed facts show the Battalion Chiefs' exempt, managerial duties are relatively more important and occupy a greater amount of time than their other duties.

### 3) Third Factor – Free from Direct Supervision

The Battalion Chiefs next argue their administrative and managerial duties are "limited," "ministerial," and do not require them "to exercise independent judgment or discretion." *See* Initial Brief at 38-39 and Dkt. 80 at 19-20. To support this argument, the Battalion Chiefs point to the amount of time they spend doing payroll and "rounds" in contrast to the time they spend doing what they wrongly assert are first responder tasks, like "conducting" training, "responding to calls," and "resting." *Id.*

## Readiness and Responsiveness is not Resting

The undisputed facts refute these assertions because the Battalion Chiefs, as part of the management team, are each responsible for the day-to-day operation, readiness, and responsiveness of multiple stations. (Dkt. 73 at 10-11, 38; Dkt. 66 at 19; Dkt. 76 at 32; Dkt. 71 at 64-65). The Battalion Chiefs are further empowered to participate in higher level management activities—reviewing policies, suggesting changes to policies, making recommendations on disciplinary, hiring, and promotional decisions. (Dkt. 67 at 55-59; Dkt. 71 at 38-40, 61-63, 66-76; Dkt. 66 at 34-35; Dkt. 73 at 163-179, 214-221).

Moreover, the undisputed facts show that upper management gives battalion chiefs' recommendations on these decisions with appreciable weight. (Dkt. 76 at 44-47; Dkt. 67 at 59-68). Indeed, Deputy Chief Hartley, a 34-year member of SCFD who has served as acting fire chief, testified, "I've usually stuck to a battalion chief's recommendation," (Dkt. 71at 73-76).

## Input and Recommendations on Policy Decisions

The Battalion Chiefs' recommendations carry great weight because they are knowledgeable in all aspects of providing fire protection and emergency medical services. (Dkt. 76 at 40-41, 47-49). They are knowledgeable about their administrative, supervisory, and managerial duties. (Dkt. 73 at 70). With this knowledge comes the discretion to observe every aspect of their subordinates'

work, assess the professionalism of their subordinates' work, and share the insight of their day-to-day observations to upper management to continually strive to improve the delivery of service to the public. (Dkt. 67 at 46-47; Dkt. 73 at 10-11, 38, 208, 214-221; Dkt. 71 at 64-65, 73-76; Dkt. 66 at 19). These undisputed facts further refute the Battalion Chiefs' argument that their input and recommendations are not given "particular weight." *See* Initial Brief at 42-46 and Dkt. 80 at 21-23.

### Exercise of Independent Judgment

The Battalion Chiefs' incorrect assertion that their work is "limited," "ministerial," and does not require them "to exercise independent judgment or discretion" further fails because they are "relatively free from direct supervision." *Emmons* at 255-256. The Battalion Chiefs work 24-hour shifts, while their superiors do not, which leaves them without a superior for much of their time on duty. Thus, the Battalion Chiefs must rely on their knowledge and judgment to perform their day-to-day managerial functions. They are incident commanders at fire scenes directing personnel and equipment in the moment—they are not waiting for direction from upper management before making those important decisions. As *Emmons* observed:

> [I]t is, more generally, no argument against the managerial nature of an employee's activities to imply that said employee could always enjoy more liberty or exercise more control. The appreciable independent judgment [battalion chiefs] must exercise in coordinating and monitoring their firefighters' work does not dwindle to nothing simply because greater authority over certain matters lies higher up in the chain

of command. To find otherwise would be to define 'management' more narrowly than the applicable regulations allow."

*Emmons* at 253. Here, the undisputed facts show the Battalion Chiefs, while performing their managerial duties, apply independent judgment and discretion and are relatively free from direct supervision. Thus, the third factor, like the first two factors, weighs in favor of the Battalion Chiefs qualifying as exempt, managerial employees, not mere first responders.

### 4) Fourth Factor – Pay Differential

The Battalion Chiefs do not discuss the fourth factor, the pay differential between themselves and other employees, other than to point out that their subordinates received overtime pay and they do not. *See* Dkt. 80 at 23-25. However, this factor is immaterial here. As *Emmons* shows, "the fourth and final factor does not suffice to overcome the combined force of the first three factors, especially given that the primary duty analysis must be a 'holistic one' that 'steps back' to look at the position in question with a 'broad lens.'" *Emmons* at 256, citing *Morrison* at 772.

### 5) Conclusion as to Four Factors – The Battalion Chiefs Perform Exempt Managerial Duties

In this case, the undisputed facts provide ample support for the conclusion that the Battalion Chiefs' primary duties are exempt, managerial duties under the first three factors. The nature of their duties is determined by what they actually

and regularly do, not by what they might, in rare circumstances, do. Accordingly, because the undisputed facts show the Battalion Chiefs do not qualify as "First Responders" under 29 CFR § 541.3(b), the entry of judgment in favor of the County was correct and should be affirmed by this Court.

## III. THE DISTRICT COURT CORRECTLY GRANTED SUMMARY JUDGMENT IN FAVOR OF THE COUNTY BECAUSE THE UNDISPUTED FACTS DEMONSTRATED THE BATTALION CHIEFS' ON-SCENE AND OFF-SCENE MANAGERIAL DUTIES FALL UNDER 29 CFR § 541.3(b).

### A. The undisputed facts show the Battalion Chiefs primarily perform exempt managerial work, including incident command duties.

The Battalion Chiefs incorrectly assert that their primary duty is not management and that they are considered first responders by the Department of Labor. *See* Initial Brief at 34-40 and Dkt. 83 at 1-6. As shown, *see* pp. 26-42, *supra*, what the Battalion Chiefs assert is first responder work is exempt managerial work per the Department of Labor.

Indeed, as shown, an "employee is not a 'fire fighter' under the First Responder Regulation merely because, for example, the words 'fire fighter' appear in his job title, 29 CFR § 541.2, or because he happens to be employed by the fire department." *See Emmons* at 251. Rather, the First Responder Regulation "presupposes therefore, that the primary duty of each enumerated group is not to 'manage the enterprise' but rather to engage in particular sorts of **hands-on activity**,

such as—in the case of fire fighters—extinguishing fires and rescuing fire and accident victims." *Id.* (emphasis added). Thus, "[a]n individual whose work does not meet this criterion though he might be called a 'fire fighter' in some other, colloquial sense, cannot be deemed one under [the First Responder Regulation]." *Id.*

The Department of Labor also addressed the incident command duties the Battalion Chiefs perform, instructing that "ensuring operational readiness through supervision and inspection of personnel, equipment, and quarters; deciding how and where to allocate personnel… [and] directing operations at … fire… scenes, including deciding whether additional personnel or equipment is needed" constitute managerial duties. *See* 69 Fed. Reg. 22,130 (Apr. 23, 2004). The undisputed facts in this case show that when the Battalion Chiefs go to an incident scene, they are incident commanders and direct their subordinates to do the hands-on activity of firefighting. The Battalion Chiefs attack their job description, but the undisputed facts show their job description and the nature of the tasks they perform, when properly viewed through the guidance of the Department of Labor, show their primary duties are exempt managerial work.

### B. The Battalion Chiefs cannot show this case is distinguishable from *Emmons*.

The Battalion Chiefs cannot show this case is distinguishable from the Fourth Circuit's holding in *Emmons. See* Dkt. 83 at 6-17. The Battalion Chiefs' initial

attempt to distinguish *Emmons* asserts that the battalion chiefs in *Emmons* could remove themselves from service calls while the Battalion Chiefs cannot do so. *See* Initial Brief at 26-29 and Dkt. 83 at 7-9. This sole distinction, which only applies to an initially arriving battalion chief in this case, fails to show *Emmons* is factually distinguishable from this case. The "fair reading" standard for determining exemption from the FLSA overtime pay requirements is not a strict, all or nothing standard. Rather, the "fair reading" analysis is a "holistic one" that reviews the position in question with a "broad lens." *Emmons* at 256; *see also Hewitt*, 143 S. Ct. at 682. Under this "broad lens" the undisputed facts show the Battalion Chiefs' primary duties are managerial, which make them exempt under the executive test.

The Battalion Chiefs' second and third arguments to distinguish *Emmons* from this case focus on their role at fire incident scenes. *See* Initial Brief at 29-31, 35-38 and Dkt. 83 at 9-15. Here, the Battalion Chiefs wrongly assert that they act as frontline firefighters at incident scenes and that their incident command responsibilities do not make them exempt employees. *Id.* As shown, the Battalion Chiefs are indisputably not engaged in the "hands-on activity" of firefighters at fire incident scenes. *See Emmons* at 251. Instead, what the Battalion Chiefs do at fire incident scenes, i.e., their command responsibilities involve what the Department of Labor considers managerial work, not first responder work. *See* 69 Fed. Reg. 22,130 (Apr. 23, 2004); *see also Emmons* at 252.

The Battalion Chiefs' final attempt to distinguish themselves from the battalion chiefs in *Emmons* is the incorrect argument that their administrative duties are merely "ministerial" and do not require them to exercise independent judgment and discretion. *See* Initial Brief at 38-39 and Dkt. 83 at 15-17. The Battalion Chiefs focus their argument on some of their day-to-day tasks, like payroll and data entry. However, most of their day-to-day responsibilities involve the exercise of their discretion and independent judgment to ensure the professionalism and readiness of the 25 to 50 firefighters under their command.

Notably, *Emmons* viewed these daily staffing and supervisory duties as "exempt managerial work." *See Emmons* at 252-253. Indeed, as *Emmons* aptly observed, "[i]f this kind of activity does not constitute 'planning the work,' 'apportioning the work,' and 'deciding how and where to allocate personnel,' it is difficult to imagine what could." *Id.* "[T] hat these [supervisory] activities constitute 'training' employees, 'disciplining' them, and 'maintaining operational readiness through inspection and supervision of personnel,' is clear." *Id.*

The Battalion Chiefs try to distinguish this case from *Emmons*, relying on a case from the Northern District of Georgia, *Vickery v. City of Roswell*, 2024 WL 4504999 (N.D. Ga. Aug. 9, 2024). However, *Vickery* is distinguishable from this case because the battalion chief in that case "spent far more time responding to emergency situations that on managerial duties." *See Vickery* at \*6. This included

the expectation that the battalion chief "when appropriate, would perform the duties required of any firefighter, including advancing the hose line, rescuing victims, and hooking into a fire hydrant." *Id*. In contrast, the expectation in this case is that a battalion chief serving at an incident scene might perform hands-on firefighting activities in an exceptional, rare circumstance.

*Vickery* is further distinguishable because the battalion chief in that case also had no budgetary authority and was not responsible for developing and training staff. *Id*. at *7. Thus, the battalion chief in *Vickery* had much less managerial responsibility and greater expectation to directly fight fires. *Id*. at *6-7.

In contrast to *Vickery* and in close alignment with *Emmons*, the undisputed facts show that the Battalion Chiefs operate as battalion supervisors and incident commanders, not frontline firefighters. They are not automatons that merely input data into a computer system. Rather, they are integral parts of the management of the organization, which shows they are exempt executive employees. Accordingly, because the undisputed facts show the Battalion Chiefs' on-scene and off-scene managerial duties fall under 29 CFR § 541.3(b), the entry of judgment in favor of the County was correct and should be affirmed by this Court.

## CONCLUSION

Wherefore, based upon the foregoing, the judgment below correctly granted summary judgment in favor of the County. Accordingly, this Court should affirm the District Court's judgment.

Respectfully submitted,

Joshua B. Moye, County Attorney
Scott T. Bossard, Assistant County Attorney
Florida Bar No. 0038407
Attorney for Defendant/Appellee
Sarasota County, Florida
Office of the County Attorney
1660 Ringling Boulevard, Second Floor
Sarasota, Florida 34236
Telephone: (941) 861-7272
Facsimile: (941) 861-7267
E-Mail: sbossard@scgov.net

BY: /s/ Scott T. Bossard
       Scott T. Bossard
       Assistant County Attorney

## CERTIFICATE OF COMPLIANCE WITH RULE 32(g), FEDERAL RULES OF APPELLATE PROCEDURE

This brief was prepared using 14-point type (Times New Roman) and the word count is 10993.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing document has been Electronically filed with the Clerk of Court using the EM/ECF System and sent this 24th day of January 2025 via electronic mail and first-class U.S. mail to:

> Tamara Imam, Esq
> MOONEY, GREEN, SAINDON,
> MURPHY & WELCH, P.C.
> 1920 L Street, NW, Suite 400
> Washington, DC 20036
> timam@mooneygreen.com
> *Attorneys for Appellants*

BY: _/s/Scott T. Bossard_
         Scott T. Bossard
         Assistant County Attorney